UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANA REYES PENA,<br><br>        Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.   C06-5096RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 27, 2006 |

Plaintiff, Ana Reyes Pena, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is twenty-nine years old.[1] Tr. 47. She has a high school education and past work experience as a sales clerk, janitor, in-home cleaning person, and newspaper carrier. Tr. 14, 19, 62, 75.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On May 9, 2003, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of January 30, 2003, due to being bipolar and having tendinitis in both wrists. Tr. 13, 47, 56, 270. Her applications were denied initially and on reconsideration. Tr. 22-24, 30, 273-75. A hearing was held before an administrative law judge ("ALJ") on June 23, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 277-98.

On August 29, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had a "severe" impairment consisting of an adjustment disorder with bipolar syndrome;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform work with no exertional limitations and not requiring frequent interaction with the public, which did not preclude her from performing her past relevant work as a janitor, in-home cleaning person and newspaper carrier; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 20-21. Plaintiff's request for review was denied by the Appeals Council on January 27 2006, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981, § 416.1481.

On February 21, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits, or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in evaluating the opinion of Dr. Lolita Velmer, an examining psychiatrist;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in assessing plaintiff's residual functional capacity; and

(d) the ALJ erred in finding plaintiff capable of performing her past relevant work and other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

REPORT AND RECOMMENDATION
Page - 2

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ Did Not Err in Rejecting the Opinion of Dr. Velmer

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

REPORT AND RECOMMENDATION
Page - 3

legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff was evaluated by Dr. Lolita Velmer in early September 2003.  Dr. Velmer diagnosed her with a mixed bipolar disorder, psychological stressors due to "[s]evere" mental illness, and a current global assessment of functioning ("GAF") score of "around 20." Tr. 112.  In terms of diagnosis, prognosis, and functional assessment, Dr. Velmer opined as follows:

> Bipolar disorder is treatable but at times may become treatment resistant, mostly in "mixed" cases though she is now somewhat responsive to treatment but may easily turn into manic stage, as she has symptoms of rapid cycling, the case may be considered treatment resistant. . . .
>
> At this point, the claimant may not be able to manage her funds in her current mental state with rapid mood swings and is unable to engage in work relationships and complete a normal workday and workweek because of interference of her severe mood swings and changes from manic to depressed state.  She needs vigorous aggressive treatment and is unable to be employed at this time.

Id.

With respect to Dr. Velmer's opinion, the ALJ found in relevant part as follows:

> I have considered the opinion of Disability Determination Services examining psychologist consultant Lolita Velmer, M.D., that the claimant is unable to engage in work relationships and complete a normal workday and workweek due to interference of her severe mood swings and changes from manic to depressed state. (Exhibit 1F).  This consultant appears to have become the claimant's advocate.  She speculated that

> rapid cycling of claimant's moods will continue to be resistant to medication. However, this is clearly contrary to all other medical documentation contained in the record. The claimant has had no manic episodes in the past year, and the claimant's nurse practitioner, who saw her on a regular basis, continually assigned GAF ratings of 60 for the claimant. For that matter, the claimant's current and past level of activity is clearly not consistent with a GAF of 20. Accordingly, I have rejected Dr. Velmer's opinions and accord them no weight.

Tr. 18. Plaintiff argues the ALJ's above stated reasons for rejecting Dr. Velmer's opinion to be improper. Except with respect to the ALJ's statement that Dr. Velmer appeared to have become plaintiff's advocate, the undersigned disagrees.

Absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."). Here, despite the ALJ's contention regarding the motivation behind Dr. Velmer's opinion, there is no evidence in the record of "actual improprieties." Indeed, as pointed out by plaintiff, Dr. Velmer was the Commissioner's designated evaluator. Although Dr. Velmer may or may not have engaged in speculation in concluding plaintiff's condition would resist medication, there is nothing in her report to indicate this conclusion was based on improper motives.

The other reasons the ALJ gave for rejecting Dr. Velmer's opinion, however, are both sufficient and legitimate.[2] Regardless of whether Dr. Velmer's conclusion regarding medical resistance was mere speculation, the ALJ properly noted that this conclusion was contrary to the other medical evidence in the record. For example, non-examining physicians, Carla van Dam, Ph.D., and Thomas Clifford, Ph.D., found plaintiff's bipolar disorder had a "good response to medication." Tr. 219; Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149 (non-examining physician's opinion may constitute substantial evidence if consistent with other independent evidence in record). Here the record shows that although plaintiff has experienced some significant side effects from her medication (Tr. 146-47, 149, 152, 154, 161, 164, 197, 250-52, 254, 259), reports from other physicians and her mental health counselors indicate she experienced significant improvement therefrom, even well after the date Dr. Velmer issued her report (Tr. 119, 133,

---

[2] Plaintiff asserts the ALJ provided these other reasons solely to support his finding that Dr. Velmer appeared to be acting as her advocate. Plaintiff's Opening Brief, p. 11. It is not clear though that this necessarily was the ALJ's intent. In any event, those reasons in themselves provided a sufficient basis upon which the ALJ could reject Dr. Velmer's opinion.

REPORT AND RECOMMENDATION
Page - 5

1  152, 154, 197, 232, 235, 238, 243-44, 248, 251-53, 260).[3]

2  In addition, the record supports the ALJ's finding that a significant amount of time had passed since plaintiff last suffered from a manic episode. Indeed, Dr. Velmer did not note that plaintiff had experienced any recent such episodes, although she opined that plaintiff might "easily" change "into a manic stage." Tr. 109-12. While plaintiff reported having had four "nervous breakdowns" during a ten year period, the last of those occurred in early October 2003. Tr. 113-15. In early December 2003, plaintiff reported that she was going through the "longest period" of having no mania "ever." Tr. 244. In addition, in early December 2004, plaintiff reported that her last "psychotic mania" actually happened "two to three years ago." Tr. 252-53. She also reported that she had not had another one since being on her medication. Id.

Finally, with respect to the very low GAF score with which Dr. Velmer rated plaintiff, the ALJ correctly noted that the weight of the evidence, medical or otherwise, in the record belied that such a score. For example, Drs. van Dam and Clifford opined that the record showed plaintiff had only mild to moderate mental functional limitations in certain areas. Tr. 213, 217-19. In early December 2004, plaintiff was diagnosed with a current GAF score of 45 during a hospitalization for depression and suicidal thoughts, the highest in the past year noted as being an estimated 70. Tr. 255. At the time of her discharge, plaintiff's GAF score had risen to 58. Tr. 259. As the ALJ pointed out, furthermore, her mental health counselors assessed her with GAF scores ranging between 45 and 60.[4] Tr. 157, 183.

II.     The ALJ Improperly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a

---

[3] Indeed, plaintiff reported in early December 2004, that her medication resulted in improved mood, no suicidal ideation, greater energy and interest, and brighter effect, without "any untoward side effects." Tr. 260. In early May 2005, she reported experiencing no medication side effects. Tr. 248.

[4] Plaintiff argues the GAF score with which Dr. Velmer rated plaintiff should be upheld because it was an estimate of her "condition on the day or during the week of the report and not a permanent rating," and it's accuracy was "independently confirmed" by a chart note dated contemporaneously therewith. Plaintiff's Opening Brief, pp. 11-12. But this is exactly the point. While the evidence in the record may or may not support Dr. Velmer's GAF score as she estimated it to be on that date – and the evidence is far from clear in that respect – the weight of the evidence in the record shows it to have been far higher than that on any of the other dates when it was rated, including in early December 2004, more than a year after Dr. Velmer issued her report.

REPORT AND RECOMMENDATION
Page - 6

1    claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
2    as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th
3    Cir. 2001).

4         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
5    disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify
6    what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.
7    Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering,
8    the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at
9    834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811,
10   818 (8th Cir. 2003).

11        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
12   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other
13   testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ
14   also may consider a claimant's work record and observations of physicians and other third parties regarding
15   the nature, onset, duration, and frequency of symptoms. Id.

16        Here, the ALJ discounted plaintiff's credibility for the following reasons:

> In reviewing the claimant's allegations and testimony, I find her allegations not entirely credible. Treatment and evaluation reports reveal the claimant has been seen for mental problems by a nurse practitioner for counseling. The record reveals she has responded well to medication, although her treatment regimen has at times been complicated by failure to always take her prescriptions. By her own admission, she has not always been good about taking medication as prescribed. Although Ms. Reyes [plaintiff] claims she cannot work because she is too moody, cannot concentrate and is easily angered, she ran her own business cleaning homes for a considerable period of time. At the same time she engaged in this work she also taught English as a second language and worked at an office cleaning job. Given all the above, I find the claimant's allegations concerning her inability to work due to disabling impairments excessive and not fully credible.

23   Tr. 19. Because the record contains no evidence that plaintiff is malingering, the ALJ's reasons must be
24   clear and convincing. Plaintiff argues that these are not clear and legitimate reasons for discounting her
25   credibility. The undersigned agrees with respect to the ALJ's first stated reason for discounting plaintiff's
26   credibility, but not in regard to the second one.

27        Plaintiff first takes issue with the ALJ's reliance on how plaintiff performed her past work. As an
28   example, she argues that she was let go from her most recent job and hospitalized for mental health issues in
     January 2003. See Tr. 154. Plaintiff also points to nurse treatment notes contained in the record dated

shortly thereafter showing that she reported experiencing racing thoughts, depressed mood and paranoia, suggesting these symptoms may have been present while she was working. Id.  However, elsewhere in the record, plaintiff reported getting fired from that job for "blowing the whistle on improprieties" occurring at work. Tr. 154, 253.  In addition, the mere fact that plaintiff may have been experiencing certain symptoms during the time she was working, does not alone mean they were disabling at the time.

On the other hand, plaintiff is correct in pointing out that all of the work she did on which the ALJ relies to counter her allegations of inability to work due to mental functional limitations occurred prior to her alleged onset date of disability.  As such, the ALJ's reliance on this evidence to discount plaintiff's claims that she could not continue to work after that date is questionable at best.  Indeed, defendant has not provided any argument on this point.  It certainly might have been reasonable for the ALJ to have looked at plaintiff's recent past work history, had she continued to work to any significant extent beyond her alleged onset date of disability.  However, plaintiff did not do so, and the ALJ himself acknowledged that fact in his decision. See Tr. 20.  Accordingly, the ALJ erred.

Plaintiff also finds fault with the ALJ's findings regarding plaintiff's failure to always take her prescribed medication.  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  The evidence in the record does show that plaintiff stopped taking her medications for a period of time in 2004, due to her reported problems with weight gain. Specifically, in early December 2004, it was noted that although they "were very helpful for her," plaintiff "quit" taking her Depakote and Effexor eight months prior thereto because "she could not tolerate the weight gain associated with" them. Tr. 250-54, 259.

In essence, however, the ALJ discounted plaintiff's credibility here because the record revealed plaintiff "responded well to medication," not because of her failure to take it.  Medical improvement is a valid basis for discounting a claimant's credibility. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Indeed, the evidence in the record shows plaintiff has improved on the medication she has been prescribed. See Tr. 112, 119, 133, 152, 154, 219, 232, 235, 238, 243-44, 252-53, 260.  For example, in late August 2003, plaintiff reported that her medications were "working," with no indication of side effects. Tr. 133.  In mid-November 2003,

she stated that the increase in her Effexor was "just what" she needed. Tr. 119.

In mid-December 2003, plaintiff reported that she was "[d]oing well on present" medication, and that this was her "longest period of" no "mania ever" on that medication. Tr. 243-44.  In late January and early February 2004, she reported that she liked her current medications and was "[d]oing well" on them.  Tr. 235, 238.  Plaintiff continued to report "[d]oing well on her present" medications in early March 2004.  Tr. 232.  It was only when she went off her medications that her symptoms increased. Tr. 228.  In early December 2004, furthermore, plaintiff denied having "any untoward side effects from the medications," and endorsed "that her mood improved" and "her suicidal ideation remitted completely." Tr. 260.  In early May 2005, plaintiff again reported having no medication side effects. Tr. 248.

The record, therefore, does indicate that plaintiff experienced significant improvement due to her medication, despite her reported problems with weight gain.  While this would tend to support the ALJ's credibility determination, because the ALJ's opinion contains no discussion of plaintiff's medication side effects, it is not clear the ALJ actually considered them in making his determination or the overall effect they may have had on plaintiff's ability to comply fully with her treatment.  As such, the undersigned is unable to say at this point that the ALJ necessarily was wrong to discount plaintiff's credibility due to her improvement on medication.  Accordingly, on remand, the Commissioner should re-consider the issue of plaintiff's medication side effects.[5]

III.   The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

---

[5] Plaintiff also argues the ALJ erred in relying on her activities of daily living in part to discount her credibility. Plaintiff's Opening Brief, p. 17. However, because the ALJ discussed plaintiff's activities in the context of his step three analysis, it does not appear he actually relied on those activities in discounting her credibility. Tr. 18.

REPORT AND RECOMMENDATION
Page - 9

must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Dr. van Dam and Dr. Clifford opined that plaintiff was moderately limited with respect to pace. Tr. 213, 218. They also opined that she was moderately limited in her ability to complete a normal workday and workweek. Tr. 218. Plaintiff argues the ALJ erred by failing to provide any explanation as to why he did not include those limitations in his assessment of her residual functional capacity. The undersigned agrees. In his decision, the ALJ assessed plaintiff with the residual functional capacity "to perform work not requiring frequent interaction with the public," with "no exertional limitations." Tr. 20. Clearly, this assessment does not include the limitations on pace and plaintiff's ability to complete a normal workday and workweek found by Drs. van Dam and Clifford.

Defendant argues the ALJ's residual functional capacity assessment should be upheld, because it "accounted for [p]laintiff's physical and mental limitations," and because the ALJ "considered all of the evidence." Defendant's Response Brief, p. 10. However, defendant's argument here – to the extent it can be called such – utterly fails to address the specific merits of the issue plaintiff raises, and thus is entirely unhelpful to the Court. Indeed, it appears the ALJ failed to even acknowledge the existence of Dr. van Dam's and Dr. Clifford's report in his decision. As such, it is far from clear that the ALJ's assessment of plaintiff's residual functional capacity included all of her mental limitations.

IV. **The ALJ Erred in Finding Plaintiff Capable of Performing Her Past Work and Other Work Existing in the National Economy**

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). If she can make that showing, then at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy plaintiff is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed the following hypothetical question:

> [Y]ou're dealing with an individual the same age as our claimant, who has the same educational background and past work experience. Assume for this hypothetical that this person . . . would have no exertional limits, but would be capable of simple, one, two, three-step work. And should have limited interaction with the public.

Tr. 295. In response to that hypothetical question, the vocational expert testified that plaintiff would be able to return to her past work as a newspaper carrier, a janitor and an in-home cleaner, and, in addition, would be able to perform the jobs of small products assembler and electronics worker. Tr. 295-96. Based on the vocational expert's testimony, the ALJ found plaintiff capable both of returning to her past relevant work and other work existing in the national economy. Tr. 20.

As with the ALJ's assessment of her residual functional capacity, plaintiff argues the ALJ erred in posing the above hypothetical question to the vocational expert, because it did not contain all of the mental functional limitations found by Dr. van Dam and Dr. Clifford. The undersigned agrees. Because, as discussed above, the ALJ erred in failing to provide any explanation as to why he was not adopting all of the mental functional limitations found by Drs. van Dam and Clifford in assessing plaintiff's residual functional capacity, it also cannot be said at this time that the above hypothetical question included all of plaintiff's limitations. Defendant states without elaboration that hypothetical question did reflect all of plaintiff's credible limitations, but, as with her argument regarding the ALJ's residual functional capacity assessment, defendant fails to provide any support for this statement.

## V. This Matter Should Be Remanded to the Commissioner For Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Plaintiff argues that the ALJ's decision should be reversed and that benefits should be awarded outright.  While the undersigned agrees that the ALJ erred as discussed above, and that therefore the ALJ's decision should be reversed, the record simply does not support an outright award of benefits at this stage of the proceedings.  Specifically, issues remain with respect to plaintiff's credibility, her residual functional capacity assessment, her ability to return to her past relevant work, and her ability to perform other work existing in significant numbers in the national economy.

Plaintiff implies that the vocational expert's response to the mental functional limitations included in the ALJ's second hypothetical question, when added to the first hypothetical question set forth above, established her disability.  That second hypothetical question was posed as follows:

> The second hypothetical will build on the first, but . . . I'd ask you to consider that this person is simple [sic] going to be unable to persist on any regular schedule, is going to be missing work in hours and whole days, and it's going to cause the employer to recognize that for 2 or more days a month consistently this person is not going to be there.

Tr. 296.  In response, the vocational expert testified that a person with these limitations would not be able to maintain competitive employment. Id.  It is not at all clear, however, that these additional limitations are supported by the weight of the evidence in the record, or that the ALJ therefore was required to adopt them.  Thus, the issue of plaintiff's alleged disability remains unresolved.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

REPORT AND RECOMMENDATION
Page - 12

was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 27, 2006**, as noted in the caption.

DATED this 29th day of September, 2006.

Karen L. Strombom
United States Magistrate Judge